Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
William C. Wright (WW 2213)
bwright@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
EPSTEIN DRANGEL LLP
6 East 45th Street, 7th Floor
New York, NY 10017
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Shoyoroll Corporation*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHOYOROLL CORPORATION<br>*Plaintiff*<br><br>v.<br><br>CHRONLABZ LTD.; HAMAD HASSAN<br>d/b/a SCORPION GI; and SCORPION GI<br>*Defendants* | **CIVIL ACTION NO. 26-cv-6835**<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Shoyoroll Corporation ("Plaintiff" or "Shoyoroll"), a corporation organized under

the laws of the State of California, by and through its undersigned counsel, alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for counterfeiting of Plaintiff's federally registered trademarks

in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d); trademark infringement of Plaintiff's

federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15

U.S.C. §§ 1051 *et seq.*; and false designation of origin, passing off and unfair competition in

violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)) (the

"Action"). Plaintiff seeks injunctive relief, an accounting, compensatory damages and/or statutory

damages, enhanced discretionary damages, attorneys' fees and costs, and such other relief as the

Court deems proper.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b), as an action arising out of claims for unfair competition; and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.

3.      Personal jurisdiction exists over Defendant Chronlabz Ltd. ("Chronlabz"), Defendant Hamad Hassan d/b/a Scorpion Gi ("Hassan"), and Defendant Scorpion Gi ("Scorpion Gi") (collectively, "Defendants") in this judicial district pursuant to N.Y. C.P.L.R. § 302(a)(1) and/or N.Y. C.P.L.R. § 302(a)(3) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this judicial district, particularly via their fully interactive website(s); contract to supply and supplies their goods (including, upon information and belief, Counterfeit Products, as defined *infra*) and services to consumers in New York and in this judicial district; derive substantial revenue from their business transactions in New York and in this judicial district; otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process; and/or Defendants' infringing actions caused injury to Plaintiff in New York and in this judicial district, such that Defendants should reasonably expect their actions to have consequences in New York and in this judicial district.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, a substantial part of the events or omissions giving rise to the asserted claims occurred

in this judicial district, harm to Plaintiff has occurred in this judicial district, and/or this Court may exercise personal jurisdiction over Defendants in this judicial district.

## **THE PARTIES**

5.      Shoyoroll is a corporation organized and existing under the laws of the State of California, having its principal place of business at 2698 Saint Louis Avenue, Signal Hill, CA 90755.

6.      Upon information and belief, Chronlabz is a limited company organized and existing under the laws of Canada, having a registered office of 55 Oswell Drive, Ajax ON L1Z 0L4, Canada. According to Canada's corporate registry, Hassan is the sole Director thereof.

7.      Upon information and belief, Hassan is an individual, who is believed to be a resident of Canada, residing at 55 Oswell Drive, Ajax ON L1Z 0L4, Canada or 206 Drummond Drive, Maple ON L6A 3E2 Canada.

8.      Upon information and belief, Scorpion Gi is the owner and/or operator of the website located at www.scorpiongi.com (the "Scorpion Gi Website"), which lists an address of 206 Drummond Drive, Maple ON L6A 3E2 Canada.

9.      According to opengovca.com, among other Internet sources, the address listed on the Scorpion Gi Website is associated with Chronlabz and Hassan.

10.      Upon information and belief, Hassan was and is, an officer, director, principal, shareholder and/or owner of Chronlabz and Scorpion Gi, and the unlawful acts of Hassan, as alleged herein, were performed within the course and scope of Hassan's position(s).

11.      Upon information and belief, at all times relevant hereto, Chronlabz and Scorpion Gi were, and are, under the de facto control and served, and serve, as the alter egos of Hassan. Upon information and belief, Hassan is a moving and conscious force behind the infringement that

3

is the subject of this lawsuit.

12.     Upon information and belief, adherence to the fiction of the existence of Chronlabz and/or Scorpion Gi as separate and distinct from Hassan would permit an abuse of the corporate privilege and would permit an injustice in that Hassan would succeed in avoiding legally incurred liabilities while maintaining the benefits of the corporate status.

13.     Upon information and belief, at all times relevant to this Complaint, such a unity of interest and ownership existed, and currently exists, between and among all Defendants such that separate personalities did not, and do not, in reality exist.

14.     Upon information and belief, Defendants have collectively engaged in the illegal conduct alleged herein, and have enriched themselves, while Plaintiff has suffered enormous financial injury.

## GENERAL ALLEGATIONS

### Shoyoroll and its Well-Known *Jiu Jitsu* Products

15.     Shoyoroll is a specialized apparel company that designs, develops, markets and sells traditional *jiu jitsu* fighter uniforms, known as "gis" (comprised of a jacket, pants and a belt), along with apparel, and accessories, under its well-known Shoyoroll brand (collectively, the "Shoyoroll Products").

16.     The Shoyoroll brand was created in 1999 and has since become known as a trailblazer in the *jiu jitsu* apparel industry, such that it is now the must-have brand for Brazilian *jiu jitsu* fighters worldwide.

17.     Shoyoroll offers limited-edition releases or "batches" of its gis, which are highly sought after, and sell out quickly.

18.     Shoyoroll sells its Shoyoroll Products to consumers around the globe.

19.    In the United States, Shoyoroll sells its Shoyoroll Products through its website, available at https://shoyoroll.com/ ("Plaintiff's Website"). True and correct screenshots of certain pages of Plaintiff's Website, exemplifying some of the Shoyoroll Products currently being offered for sale by Plaintiff, are attached hereto as **Exhibit A** and incorporated herein by reference.

20.    Shoyoroll has also released Shoyoroll Products in collaboration with select third-party partners, including but not limited to, RVCA Sports, the Cactus LA Store, and Nous Defions Group, which have been offered for sale via Plaintiff's Website and/or directly through Shoyoroll's partners' websites.

21.    The Shoyoroll Products typically retail for approximately one hundred eighty to three hundred fifty dollars ($180-350.00) per gi.

22.    Given the exceptionally high demand for the Shoyoroll Products, but limited quantities thereof, there has developed a very active online re-sale market in which the Shoyoroll Products have been re-sold for prices as high as two thousand dollars ($2,000.00) per gi.

23.    The internationally successful Shoyoroll brand has attained a reputation for manufacturing unique, high-quality, premium fighter apparel and, as a result, has been featured in various online publications within the *jiu jitsu* industry, including but not limited to: www.mmafrenzy.com, www.fighttrends.com, www.digitsu.com, and www.bjjee.com, among others.

24.    The Shoyoroll Products have also been endorsed and worn by several of the most well-known and highly acclaimed *jiu jitsu* fighters in the world.

25.    Plaintiff owns all registered and unregistered intellectual property rights in and to its Shoyoroll brand and Shoyoroll Products, including all registered and unregistered trademarks.

26.    In addition, Plaintiff has protected its valuable rights by filing for and obtaining

federal trademark registrations. For example, Shoyoroll is the owner of the following U.S. Trademark Registration Nos.: 4,083,765 for "SHOYOROLL" for goods in Class 25, and 4,087,401 for " " for goods in Class 25 (collectively, the "Shoyoroll Marks"). True and correct copies of the registration certificates covering the aforementioned Shoyoroll Marks (collectively, the "Shoyoroll Registrations") are attached hereto as **Exhibit B** and incorporated herein by reference.[1]

27. The Shoyoroll Marks are currently in use in commerce in connection with the Shoyoroll Products, and were first used in commerce on or before the dates of first use reflected in the Shoyoroll Registrations.

28. The success of the Shoyoroll Products is due in part to Plaintiff's marketing and promotional efforts, as well as its use of the highest quality materials and processes in producing the Shoyoroll Products.

29. In addition, Shoyoroll owes a substantial amount of the success of the Shoyoroll Products to its consumers and the word-of-mouth buzz that its consumers have generated.

30. As a result of Shoyoroll's efforts, the high quality of the Shoyoroll Products and extensive press and media coverage and word-of-mouth buzz they have generated, Shoyoroll, its Shoyoroll Products and its Shoyoroll Marks have become prominently placed in the minds of the public. Retailers, retail buyers, consumers, and members of the public have become familiar with Shoyoroll, its Shoyoroll Products and Shoyoroll Marks and have come to associate them exclusively with Shoyoroll. Shoyoroll has acquired a valuable reputation and goodwill among the public as a result of such associations.

31. Shoyoroll has gone to great lengths to protect its interests in and to its Shoyoroll

---

[1] While the Shoyoroll Registrations list Vince Quitugua as the owner thereof, per the assignments on file with United States Patent and Trademark Office, Plaintiff is the owner of the Shoyoroll Registrations.

Products and Shoyoroll Marks. No one other than Shoyoroll is authorized to use the Shoyoroll Marks, or any marks that are confusingly similar thereto, or manufacture, import, export, advertise, distribute, offer for sale, or sell any Shoyoroll Products, without the express written permission of Shoyoroll.

**Defendants' Wrongful and Infringing Conduct**

32.    Particularly in light of the success of Plaintiff and its Shoyoroll Products, both Plaintiff and its Shoyoroll Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame Plaintiff has amassed in its Shoyoroll Products and Shoyoroll Marks.

33.    Plaintiff investigates and enforces against such activity, and through such efforts, learned of Defendants' actions, which vary, and include one or more of the following: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling products bearing or used in connection with the Shoyoroll Marks, and/or products in packaging and/or containing tags or labels bearing the Shoyoroll Marks, and/or bearing or used in connection with marks that are confusingly similar to the Shoyoroll Marks, and/or products that are identical or confusingly similar to Shoyoroll Products (hereinafter referred to as, "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers, including those located in the State of New York, through, at the very least, Defendants' website, available at https://scorpiongi.com/ ("Defendants' Website").

34.    For example, a true and correct screenshot of a section of Defendants' Website, which is specifically dedicated to "Shoyoroll" and currently features a plethora of products, including gis, rash guards, shorts, belts, and hoodies, appears below:



35.    Defendants' "Shoyoroll Collection" is also advertised on the homepage of Defendants' Website, as depicted below:



36.    In order to further investigate Defendants' infringing conduct, Plaintiff's counsel placed a test buy from Defendants' Website, which was shipped to, and received by, Plaintiff's counsel in New York. True and correct photographs of the Counterfeit Products received by Plaintiff's counsel, and Plaintiff's counsel's receipt for the same, are attached hereto as **Exhibit C** and incorporated herein by reference.

37.    Notably, as evidenced by **Exhibit C**, the return label of the packaging of the Counterfeit Products received by Plaintiff's counsel in New York, New York denotes that it is from Hamad Hassan, Chronlabz Ltd., 2-157C Hardwood Avenue N., Unit 108, Ajax, ON L1Z0B6 Canada, which, upon information and belief, is a UPS store.

38.    Plaintiff has confirmed that the Counterfeit Products sold by Defendants, which are offered for sale and/or sold at significantly below market prices, are counterfeit and infringe Plaintiff's Shoyoroll Marks, and do not meet Plaintiff's high quality standards.

39.    Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Shoyoroll Products, albeit inferior in qualify, only with minor variations that no ordinary consumer would recognize, and as such, the willfulness of Defendants' actions cannot be questioned.

40.    For example, below is a side-by-side example of one of Plaintiff's listings for its authentic Shoyoroll Products from Plaintiff's Website (for $250 USD) as compared to one of Defendants' listings for Counterfeit Products on Defendants' Website (for $98.99 USD):

| Plaintiff's Shoyoroll Product Listing | Defendants' Counterfeit Product Listing |
| --- | --- |
|  | |

9

41.     Not only do Defendants offer a litany of Counterfeit Products on Defendants' Website, but they also hold themselves out as an authorized retailer of Shoyoroll Products. For example, in order to create an air of authenticity, on the blog page of Defendants' Website, Defendants denote the following:[2]

## Why Choose Shoyoroll from Scorpion GI?

At Scorpion GI, we are proud to offer **Shoyoroll** products, widely considered the best in the BJJ community. Whether you prefer Gi or No Gi, Shoyoroll combines exceptional quality, comfort, and performance.

**Shoyoroll Gi: Why It's the Best Choice**

- **Durable Construction**: Made from top-tier fabrics with reinforced stitching, Shoyoroll Gis are built to withstand intense training.
- **Perfect Fit**: Tailored to provide a snug, comfortable fit, ensuring you can move freely.
- **Customization Options**: Personalize your Gi with patches and embroidery to reflect your style and achievements.

**Shoyoroll No Gi: Performance Meets Style**

- **Performance Fabrics**: Lightweight and breathable materials help keep you cool during tough training sessions.
- **Functional Design**: The tight-fitting design reduces grip opportunities, enhancing your agility and control.
- **Aesthetic Appeal**: Shoyoroll's designs are stylish and functional, giving you confidence both on and off the mats.

Whether you prefer the technical mastery of Gi training or the speed and athleticism of No Gi, **Shoyoroll** offers the best gear to elevate your performance. Visit Scorpion GI today to explore our selection of Shoyoroll Gis and No Gi apparel!

**Shop Shoyoroll at Scorpion GI Now!**

42.     Defendants also have other blog posts on Defendants' Website, all of which state that they are written by Hassan, where Defendants, among other things, explain why Shoyoroll is the "gold standard", and indicate that Defendants are proud to offer the same, thereby further affirming the willful nature of Defendants' actions. Attached hereto as **Exhibit D** are true and correct print outs of examples of such blog posts on Defendants' Website.

43.     Despite what Defendants suggest, Defendants are not, nor have they ever been, authorized distributors of the Shoyoroll Products or licensees of the Shoyoroll Marks.

44.     Neither Plaintiff nor any of Plaintiff's authorized agents have consented to Defendants' use of Plaintiff's Shoyoroll Marks, nor have they consented to Defendants' use of any

---

[2] *See* https://scorpiongi.com/blogs/brazilian-jiu-jitsu/bjj-gi-vs-no-gi-key-differences-featuring-shoyoroll.

identical or confusingly similar marks.

45.     Defendants have also extensively advertised and/or promoted the Counterfeit Products via social media, including via their @scorpionbjjgi Instagram handle. An example of one of Defendants' Instagram posts appears below:



46.     In another of Defendants' Instagram posts, Defendants depict the manufacturing of the Counterfeit Products, and tag the location as New York, as depicted below:

11



47.     By Defendants' dealings in Counterfeit Products (including, without limitation, its manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products) as alleged herein, Defendants have violated Plaintiff's exclusive rights in and to its Shoyoroll Marks and have used marks and/or designs that are confusingly similar to, identical to, and constitute counterfeiting and/or infringement of Plaintiff's Shoyoroll Marks, to confuse consumers and aid in the promotion and sales of Defendants' Counterfeit Products. Defendants' conduct and use began long after Plaintiff's adoption and use of its Shoyoroll Marks.

48.     Prior to and contemporaneous with its unlawful actions alleged herein, Defendants had knowledge of Plaintiff's ownership of its Shoyoroll Marks, the extraordinary fame and strength of Plaintiff's Shoyoroll Marks and the incalculable goodwill associated therewith, and in bad faith adopted Plaintiff's Shoyoroll Marks.

49.     Defendants' illegal counterfeiting and infringing actions, as alleged herein, will cause confusion, mistake and deceive consumers, the public, and the trade with respect to the

12

source or origin of Defendants' Counterfeit Products, and cause consumers to erroneously believe that such Counterfeit Products are licensed by, or otherwise associated with Plaintiff, thereby damaging Plaintiff.

50. In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Plaintiff: counterfeited and/or infringed Plaintiff's Shoyoroll Marks, committed unfair competition; and unfairly and unjustly profited from such activities at Plaintiff's expense.

51. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

52. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

53. Plaintiff is the exclusive owner of all right and title to its Shoyoroll Marks, which it has continuously used in interstate commerce since on or before the dates of first use as reflected in the Shoyoroll Registrations attached hereto as **Exhibit B**.

54. Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Shoyoroll Mark sand with knowledge that its Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Shoyoroll Marks and/or used spurious designations that are identical with, or indistinguishable from, the Shoyoroll Marks on or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

13

55.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold its Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Shoyoroll Marks through their participation in such activities.

56.    Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of Plaintiff's Shoyoroll Marks to packaging, point-of-purchase materials, hang tags, and/or other promotional materials intended to be used in commerce upon, or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby enabling Defendants to make substantial profits and gains to which they are not entitled in law or equity.

57.    Defendants' unauthorized use of the Shoyoroll Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in Plaintiff's Shoyoroll Marks.

58.    Defendants' actions constitute willful counterfeiting of Plaintiff's Shoyoroll Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

59.    As a direct and proximate result of Defendants' actions alleged herein, Defendants have caused substantial and irreparable injury and damage to Plaintiff and its valuable Shoyoroll

14

Marks for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause damage to Plaintiff and its valuable Shoyoroll Marks in an amount as yet unknown, but to be determined at trial.

60.    Based on the foregoing, Plaintiff is entitled to injunctive relief, damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[15 U.S.C. § 1114/Lanham Act § 32(a)]**

61.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

62.    Plaintiff, as the owner of all right, title and interest in and to the Shoyoroll Marks, which it has continuously used in interstate commerce since on or before the dates of first use as reflected in the Shoyoroll Registrations, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

63.    Defendants are now, and were at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the Shoyoroll Registrations for the Shoyoroll Marks.

64.    Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Shoyoroll Registrations for the Shoyoroll Marks, to deal in and commercially manufacture, import, export, advertise, market,

15

promote, distribute, display, retail, offer for sale and/or sell Shoyoroll Products and/or related products bearing the Shoyoroll Marks into the stream of commerce.

65.    Defendants knowingly and intentionally reproduced, copied, and colorably imitated Plaintiff's Shoyoroll Marks and applied such reproductions, copies, or colorable imitations to products, packaging, hang tags and/or advertisements used in commerce upon, or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Defendants' Infringing Products.

66.    Defendants' egregious and intentional use of Plaintiff's Shoyoroll Marks in commerce and Defendants' sale of items bearing Plaintiff's Shoyoroll Marks or colorable imitations of Plaintiff's Shoyoroll Marks has caused actual confusion, and is likely to continue to cause further confusion, to cause mistake, and to deceive the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are Plaintiff's Shoyoroll Products, or are otherwise associated with, or authorized by Plaintiff.

67.    Defendants' actions have been deliberate and committed with knowledge of Plaintiff's exclusive rights and goodwill in the Shoyoroll Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

68.    Defendants' continued, knowing and intentional use of Plaintiff's Shoyoroll Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Shoyoroll Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

69.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial and irreparable injury, loss and damage to its business and its rights in and to the Shoyoroll Marks and the goodwill associated therewith, for

16

which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause substantial and irreparable injury, loss and damage to Plaintiff and its rights in and to the valuable Shoyoroll Marks and the goodwill associated therewith.

70.    Based on such conduct, Plaintiff is entitled to injunctive relief, damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

71.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

72.    Plaintiff, as the owner of all right, title, and interest in and to the Shoyoroll Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

73.    Plaintiff's Shoyoroll Marks are inherently distinctive and/or have acquired distinctiveness.

74.    Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to and used marks that are identical or confusingly similar to and constitute reproductions of Plaintiff's Shoyoroll Mark, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Infringing Products

17

with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Products are Shoyoroll Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved endorsed or licensed by Plaintiff, and/or that Defendants and Defendants' Website are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiff's Shoyoroll Marks and Shoyoroll Products, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

75. By using marks that are identical or confusingly similar to the Shoyoroll Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Shoyoroll Marks to induce customers to purchase Defendants' Infringing Products, and will continue to induce such customers to do the same. Such conduct has permitted, and will continue to permit, Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which it has amassed through its nationwide marketing, advertising, sales and consumer recognition.

76. Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute a reproduction of Plaintiff's Shoyoroll Marks would cause confusion, mistake, or deception among purchasers, users and the public.

77. Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its Shoyoroll Products and Shoyoroll Marks.

78. As a direct and proximate result of Defendants' aforementioned actions,

Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Shoyoroll Products and by depriving Plaintiff of the value of its Shoyoroll Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of Plaintiff's Shoyoroll Marks.

79.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive and each of them, as follows:

A.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using marks or designations, knowing such marks or designations are counterfeit marks in violation of 15 U.S.C. § 1114(1)(a);

B.      In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods or services, for statutory

19

damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of its Plaintiff's federally registered Shoyoroll Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

     i.  manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

     ii.  directly or indirectly infringing in any manner any of Plaintiff's Shoyoroll Marks;

     iii.  using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Shoyoroll Marks to identify any goods or services not authorized

20

by Plaintiff;

iv.  using Plaintiff's Shoyoroll Marks and/or any other marks and/or artwork that are confusingly thereto, on or in connection with Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the Counterfeit Products;

v.  using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.  engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the advertising and/or dealing in any Counterfeit Products;

vii.  engaging in any other actions that constitute unfair competition with Plaintiff;

viii.  engaging in any other act in derogation of Plaintiff's rights;

ix.  secreting, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer

files, data, business records, documents or any other records or evidence relating to the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action; and

xi. knowingly instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above;

F.     For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Shoyoroll Marks, or bear any marks that are confusingly similar to Plaintiff's Shoyoroll Mark;

G.     For an order of the court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's Shoyoroll Marks, or bear any marks that are confusingly similar to Plaintiff's Shoyoroll Marks pursuant to 15 U.S.C. § 1118.

H.     For an order from the Court requiring that Defendants provide complete

22

accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display. offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest.

I.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

J.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

K.      For Plaintiff's reasonable attorneys' fees;

L.      For all costs of suit; and

M.      For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims so triable.

Dated:  August 11, 2026            Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY: /S Kerry B. Brownlee
     Kerry B. Brownlee (KB 0823)
     kbrownlee@ipcounselors.com
     Jason M. Drangel (JD 7204)
     jdrangel@ipcounselors.com
     William C. Wright (WW 2213)
     bwright@ipcounselors.com
     6 East 45th Street, 7th Floor
     New York, NY 10017
     Telephone: (212) 292-5390
     Facsimile:  (212) 292-5391
     *Attorneys for Plaintiff*
     *Shoyoroll Corporation*